# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BISHOP TECHNOLOGIES LTD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No: |
| | ) |
| DBCMF, LLC; | ) |
| DAVID FRANK; and | ) |
| ECO-PUR SOLUTIONS, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Bishop Technologies Ltd, by and through its attorneys, Masuda, Funai, Eifert & Mitchell, Ltd., for its Complaint against DBCMF, LLC, David Frank and Eco-Pur Solutions, LLC (collectively, "Defendants") states and alleges as follows:

## PARTIES

1.     Plaintiff Bishop Technologies Ltd ("Bishop") is a Seychelles international business company with a principal place of business in Moscow, Russia, and is a 50% owner of Eco-Pur Solutions, LLC.

2.     Defendant DBCMF, LLC ("DBCMF") is a Delaware limited liability company with a principal place of business, upon information and belief, in Bolingbrook, Illinois, and is also a 50% owner of Eco-Pur Solutions, LLC.

3.     Defendant David Frank ("Frank") is a citizen of Illinois, with principal place of residence, upon information and belief, at 970 Portsmith Lane, Bolingbrook, Illinois.

4. Defendant Eco-Pur Solutions, LLC (the "Company" or "Eco-Pur") is an Illinois limited liability company with a principal place of business in Bolingbrook, Illinois.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) (2) because this action is between citizen of a foreign state and citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over all Defendants because they have done, and are doing, business in the State of Illinois and have sufficient contacts with the State of Illinois, both generally and in regard to this specific action, that the exercise of personal jurisdiction over it does not offend the traditional notions of fair play and substantial justice.

7. The Northern District of Illinois is a proper venue pursuant to 28 U.S.C. § 139l (a) (2) because it is a district in which a substantial part of the events, acts or omissions giving rise to the claim occurred.

## BACKGROUND FACTS

### Formation of Eco-Pur and Controlling Documents

8. Eco-Pur was formed on or about February 24, 2012 to develop and sell adhesives in the commercial market.

9. On or about May 13, 2012, DBCMF and Bishop entered into an Operating Agreement for Eco-Pur, attached hereto and incorporated herein as Exhibit "A", setting forth both companies' rights and responsibilities.

10. Exhibit A to the Operating Agreement provided that DBCMF and Bishop are each 50% interest owners in Eco-Pur. Exhibit A to the Operating Agreement further provided that DBCMF's initial capital contribution would be in the form of a license of certain commercial adhesive technology, and Bishop Technologies' initial capital contribution would be in the form of certain commercial adhesive manufacturing equipment valued at $75,000.00 and specifically listed in Exhibit D to the Operating Agreement.

11. Paragraph 3.2 (b) of the Operating Agreement provided that Bishop would also lend Eco-Pur $500,000 pursuant to a Note issued by Eco-Pur and payable to Bishop.

12. Paragraph 5.1 of the Operating Agreement provided that all distributions made by Eco-Pur shall be made solely to Bishop until such time as the Note is repaid with interest.

13. Paragraph 7.1 of the Operating Agreement provided that DBCMF, through Frank as the manager of and a 99% owner of DBCMF according to paragraph 6.1(b)(1), shall be the initial Manager of Eco-Pur. Paragraph 7.7(a) of the Operating Agreement provided that the Manager would be responsible for the day-to-day administration and operation of Eco-Pur.

14. Paragraph 7.5 of the Operating Agreement provided that DBCMF and Frank could be automatically removed as Manager upon, among other things, Court determination of a breach of the Manager's fiduciary duty of loyalty or care to Eco-Pur, as well as upon any other event pursuant to the terms of the Operating Agreement.

15. Paragraph 7.8 of the Operating Agreement required DBCMF and Frank to give Bishop notice of any contract or expenditure in excess of $1,000. Paragraph 7.8 further required DBCMF and Frank to obtain express written consent of Bishop for any expenditure in excess of $10,000. Finally, Paragraph 7.8 required DBCMF and Frank to provide a monthly report to Bishop regarding Eco-Pur's revenues and expenses.

16. Article 8 of the Operating Agreement provided that DBCMF and Frank would make any tax elections for Eco-Pur allowed under the Code and would use best efforts to comply in good faith with all provisions of the Internal Revenue Code. Article 12.2(a) of the Operating Agreement further required DBCMF and Frank to be responsible for the preparation of financial reports of Eco-Pur and the coordination of financial matters.

17. Paragraph 12.1 of the Operating Agreement provided that once each calendar year, Bishop or its designated representative shall have access and the right to inspect and copy the contents of books and records of Eco-Pur showing a true and correct record of all costs and expenses incurred, all charges made, all credits made and received, and all income derived in connection with the operation of Eco-Pur.

18. Paragraph 15.12 of the Operating Agreement provided that either Eco-Pur owner would be irreparably damaged if any of the provisions of the Operating Agreement are not performed in accordance with their specific terms, and would thus be entitled to injunctive relief to prevent breaches of the Operating Agreement.

19. On or about April 30, 2012, Eco-Pur executed a Note in favor of Bishop. A copy of the Note is attached hereto and incorporated herein as Exhibit "B".

20. Paragraph 1 of the Note set forth the disbursement schedule and the total disbursement amount by Bishop of $500,000. Paragraph 1 further set forth that the failure of Bishop to fund any of the disbursements does not void or nullify Eco-Pur's obligation to repay the amounts actually funded.

21. Paragraph 10 of the Note provided that the full amount due under the Note is allowed to be accelerated and become due in the event of DBCMF's breach of duty of loyalty and care to Bishop and/or to Eco-Pur.

22. On or about April 30, 2012, Eco-Pur and Bishop entered into a Security Agreement, a copy of which is attached hereto and incorporated herein as Exhibit "C", wherein Eco-Pur granted to Bishop a lien on all of its assets for the purpose of securing all amounts owed by Eco-Pur to Bishop under the Note.

23. Paragraph 2.2(d) of the Security Agreement provided that at all reasonable times, with prior notice to Eco-Pur, Bishop may enter Eco-Pur's business premises and inspect books and records of Eco-Pur, as well as the collateral which consists of items listed in Exhibit D to the Operating Agreement as set forth above.

**Funding of Eco-Pur and Failure by DBCMF and Frank to Perform Their Duties**

24. Instead of proceeding with the funding of Eco-Pur as was set forth in paragraph 3.2(b) of the Operating Agreement and paragraph 1 of the Note, DBCMF and Frank instituted a procedure under which Eco-Pur would contact Bishop and request a specific deposit to be made at that time. Bishop would then immediately transfer the requested amount to Eco-Pur via a wire transfer. Eco-Pur, through DBCMF and Frank, requested funds, and Bishop provided all such funds, on the following dates and in the following amounts:

(a) April 20, 2012: $50,000.00;

(b) April 27, 2012: $50,000.00;

(c) May 3, 2012: $50,000.00;

(d) May 17, 2012: $50,000.00;

(e) June 14, 2012: $50,000.00;

(f) August 10, 2012: $50,000.00;

(g) October 30, 2012: $30,000.00; and

(h) February 6, 2013: $30,000.00.

In total, between April 20, 2012 and February 6, 2013, Bishop funded Eco-Pur with $410,000.00 under the Note and the Operating Agreement.

25. Throughout this time period, DBCMF and Frank have failed to perform their duties under the Operating Agreement. More specifically, DBCMF and Frank did not notify Bishop of expenditures in excess of $1,000; did not request express written consent from Bishop for expenditure above $10,000, and failed to provide required monthly financial reports for majority of the months. The few reports that were provided to Bishop were irreconcilable between one another, and Bishop was kept in the dark as to company's finances and status of its $410,000.00 cash investment plus additional $75,000 in invested capital contribution (consisting of the contributed equipment). In total, only a handful of financial reports have been provided by Eco-Pur, DBCMF and Frank to Bishop during thirty (30) months between May, 2012 and December, 2014.

**Eco-Pur's, DBCMF's and Frank's Refusal to Give Access to Eco-Pur's Books and Records**

26. In May of 2014, more than a year after the last request for funding, Eco-Pur, DBCMF and Frank sought from Bishop $90,000.00. As DBCMF and Frank had not consistently provided monthly reports as to the Eco-Pur's financial situation, and those reports that were provided indicated a bleak financial situation, Bishop requested at that time that Eco-Pur, DBCMF and Frank provide its designee with full access to the books and records of the Company, as set forth in paragraph 2.2 of the Security Agreement and paragraph 12.1 of the Operating Agreement.

27. However, when in June, 2014, with prior notice to Eco-Pur, DBCMF and Frank, Bishop's accountant, Christina Klein ("Ms. Klein"), visited Eco-Pur's business facility in

Bolingbrook, Illinois during business hours, Eco-Pur, DBCMF and Frank refused to give her access to the books and records of Eco-Pur. Frank stated that it was "[his] company" and acted in a hostile manner towards Ms. Klein.

28. Instead of providing access to Eco-Pur's books and records, Frank provided Ms. Klein with an electronic file containing some "QuickBooks" accounting records, none of which Ms. Klein was able to verify as actually reflecting the true books and records of Eco-Pur. The "QuickBooks" file Ms. Klein was able to review contained numerous accounting irregularities, indicating the existence of additional errors in the actual books and records of Eco-Pur.

29. On November 26, 2014 and December 15, 2014, legal counsel for Bishop made final attempts to gain access to all books and records of Eco-Pur. DBCMF, through its counsel, again and again refused to allow access to all of the books and records of the Eco-Pur, instead stating that it would only permit a review of books and records that it wishes to make available. Additionally, in a blatant violation of the terms of the Security Agreement, DBCMF refused to allow Bishop access to even these hand-picked books and records at Eco-Pur's facility.

### DBCMF's and Frank's Filing of Erroneous and False Tax Returns

30. Consistent with their responsibilities under Article 8 and paragraph 12.2(a) of the Operating Agreement, DBCMF and Frank filed federal income tax returns for Eco-Pur for the 2012 and 2013 fiscal years, even though the 2013 federal income tax return (the "Actual 2013 Return") was not filed timely.

31. Sometime in the first week of August, 2014, and prior to the late filing of the Actual 2013 Return, DBCMF and Frank sent to Ms. Klein a projected 2013 income tax return for Eco-Pur (the "Draft 2013 Return"). The Draft 2013 Return stated that Eco-Pur had a profit of $134,022, and that Bishop and DBCMF were each 50% owners. As was set forth in paragraph 5.1 of the

Operating Agreement, any distributable profits had to be distributed solely to Bishop until such time as the Note was repaid.

32. However, the Actual 2013 Return filed by DBCMF and Frank stated that Eco-Pur had a loss of $118,703, as opposed to the gain of $134,022 in the Draft 2013 Return; and that Bishop owned 18% of Eco-Pur, as opposed to a 50% ownership in the Draft 2013 Return. The statement as to ownership interest is undisputedly false, and DBCMF and Frank have refused to allow Bishop to review books and records of Eco-Pur to determine why there is such a drastic difference in the profits or losses between the Draft 2013 Return and the Actual 2013 Return.

33. The Actual 2013 Return contains additional false statements, namely that Bishop is a domestic (U.S.) corporation and is a domestic partner. By stating that Bishop is a domestic (U.S.) corporation rather than a foreign corporation, DBCMF has basically defrauded Bishop by improperly shifting Bishop's tax losses to DBCMF which would then enable DBCMF to apply those tax losses against any profits that it may have in the future.

34. Bishop never reviewed or authorized the filing of the Actual 2013 Return, which differs dramatically from the Draft 2013 Return that DBCMF and Frank had provided to Bishop.

**FIRST CAUSE OF ACTION - BREACH OF CONTRACT**

35. Bishop incorporates the allegations contained in paragraphs 1 through 34 of this Complaint as if the same were set forth at length herein.

36. DBCMF and Frank breached the Operating Agreement by failing (1) to notify Bishop of expenditures in excess of $1,000, (2) to request express written consent from Bishop for expenditure above $10,000, and (3) to provide required monthly financial reports for majority of the months Eco-Pur has been in operation.

37. DBCMF and Frank further breached the Operating Agreement by failing (1) to make tax elections and filings for Eco-Pur allowed and/or required under the Code, and (2) to use best efforts to comply in good faith with all provisions of the Internal Revenue Service ("IRS") Code, instead causing to be filed a tax return that was false and inaccurate on its face.

38. DBCMF and Frank also breached the Operating Agreement by failing to grant Bishop or its designated representative access to inspect and copy the contents of books and records of Eco-Pur showing a true and correct record of all costs and expenses incurred, all charges made, all credits made and received, and all income derived in connection with operation of Eco-Pur.

39. DBCMF and Frank additionally breached the Operating Agreement by breaching their fiduciary duty of care to Eco-Pur and Bishop.

40. The Illinois Limited Liability Company Act, 805 ILCS 180/15-3, provides that a manager owes the company and its other members a duty of care in the conduct of the company's business, including specifically that the manager will refrain from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of the law.

41. DBCMF and Frank failed to maintain their duty of care by filing a knowingly false tax return for Eco-Pur with the IRS. DBCMF's and Frank's false statements in the Actual 2013 Return are, at best, grossly negligent or reckless conduct and, at worst, a violation of the law.

42. The Criminal Tax Manual, at Section 12.01, *et seq.*, 26 U.S.C. § 7206, states that it is a crime if any person "[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter."

43. DBCMF's and Frank's actions have subjected both Eco-Pur and Bishop to potential penalties from the IRS.

**WHEREFORE**, Bishop prays that this Court enter judgment (1) accelerating the Note with an immediate repayment by Eco-Pur of $410,000 owed to Bishop; (2) directing Eco-Pur to turn over or make available for collection the entire Collateral securing Eco-Pur's obligations to Bishop; (3) assessing damages against DBCMF and Frank in the amount to be proven at trial; (4) removing DBCMF and Frank as Manager of Eco-Pur; (5) appointing Bishop or Bishop's designee as a new Manager of Eco-Pur; and (6) for any additional relief that this Court would deem just and proper.

**SECOND CAUSE OF ACTION – MEMBER OPPRESSION**

44. Bishop incorporates the allegations contained in paragraphs 1 through 43 of this Complaint as if the same were set forth at length herein.

45. The Illinois Limited Liability Company Act, 805 ILCS 180/35-1, provides that an LLC shall be dissolved and its business wound up on application by a member upon judicial decree that "the managers or members in control of the company have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioner."

46. DBCMF and Frank have acted in an illegal manner when they knowingly made false statements in the Actual 2013 Return for Eco-Pur.

47. Further, DBCMF and Frank have engaged in oppressive conduct with respect to Bishop. DBCMF and Frank, as Manager and member in control of Eco-Pur, have attempted to dilute Bishop's ownership and voting rights in Eco-Pur to only 18% in order to prevent Bishop's fully equitable and rightful participation in the management and oversight of Eco-Pur. DBCMF and Frank have also refused to give Bishop access to all the books and records of Eco-Pur, which

is one of Bishop's most fundamental rights as the non-manager member of a manager-managed LLC. DBCMF's and Frank's actions constitute oppressive conduct for purposes of Section 35-1 of the Illinois Limited Liability Company Act.

48. A demand upon the manager of the manager-managed LLC to bring a derivative suit on behalf of Eco-Pur would be futile. DBCMF, as manager of Eco-Pur, is the member with the authority to bring a derivative lawsuit under the Operating Agreement. DBCMF is the wrongdoer. As DBCMF is the only party in a position to bring such a suit, and it is the wrongdoer, a demand that it bring a derivative suit would be futile.

**WHEREFORE**, Bishop prays that this Court enter judgment (1) removing DBCMF and Frank as Manager of Eco-Pur; (2) appointing Bishop or Bishop's designee as a new Manager of Eco-Pur; (3) authorizing Bishop to retain a receiver to wind up the business of Eco-Pur; and (4) dissolving Eco-Pur upon wind-up.

Dated: December 23, 2014

**BISHOP TECHNOLOGIES LTD**

By: /s/ Gary Vist
One of its attorneys

Gary Vist, Esq.
Brian Caster, Esq.
Masuda, Funai, Eifert & Mitchell, Ltd.
Attorney for Plaintiff
203 N. LaSalle Street, Suite 2500
Chicago, IL 60601-1262
(312) 245-7500
(312) 245-7467 (fax)